209 A.2d 451.

THEODORE CHMIELEWSKI *vs.* R. I. DIESEL SERVICE, INC.

APRIL 26, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

POWERS, J. This is an employee's original petition for compensation benefits brought under the provisions of G. L. 1956, §28-35-12, as amended. It was heard by a single commissioner who, on a finding that the petitioner had failed to prove by the credible evidence that a heart injury sustained by him arose out of and in the course of his employment, entered a decree denying and dismissing the petition. The cause is before us on the petitioner's appeal

under §28-35-29 from a decree of the full commission affirming the decree of the trial commissioner.

At the oral arguments before the full commission, petitioner's motion that the trial commissioner disqualify himself was denied by the remaining members of the commission, the trial commissioner not participating. However, he did participate in the decision on the merits of the appeal.

In his reasons of appeal petitioner has assigned twelve grounds of alleged error. They raise two issues. The first relates to the constitutionality of §28-35-28, which authorizes the trial commissioner to participate in the review on appeal to the full commission. The second concerns petitioner's contentions that the full commission overlooked and misconceived the import of his evidence and misconceived the applicable law. We shall so consider those issues.

A number of the ultimate facts are not in dispute. They establish that respondent corporation operates a garage at 197 Anthony street in East Providence where heavy transportation equipment is serviced and repaired; that in addition to rendering service and making repairs on respondent's premises, similar work is performed for some transportation companies at the premises occupied by them; and that among such companies was Branch Motor Express Company, hereinafter called "Branch," 2 Dunn street, East Providence.

It is also undisputed that in the early morning of December 7, 1961 and for several months previously petitioner was employed by respondent; that his working hours were from midnight to 8 a.m.; that on said morning petitioner reported late for work; that at or about 4 a.m. he became ill and his foreman drove him to Roger Williams General Hospital in Providence; and that petitioner's illness was diagnosed as a "myocardial infarction" for which he was treated and hospitalized until January 6, 1962.

It is also undisputed that petitioner was treated by Dr. Walter E. Hayes and Dr. Ezra A. Sharp; that he was still under the care of Dr. Sharp at the time of the hearing; that during the course thereof petitioner was examined by Dr. Joseph S. Karas on behalf of respondent; and that petitioner has not worked since December 7, 1961.

The probative evidence is otherwise sharply contradictory. The petitioner testified that he arrived for work on the morning of December 7, 1961 about a half hour late; that he was sent by his foreman, Milton Kaiser, the only other employee on the midnight shift, to the premises of Branch where, working alone and without power tools, he was required to change an inside tire on a trailer; that the type of tires used weighed three hundred to four hundred pounds each; that because it was an inside tire which was flat, he was required to take off and remount the outside and inside tires; that it was a very cold night; and that the work required an hour and a half and called for great exertion.

The foreman on the other hand testified with equal firmness that petitioner arrived two hours late for work and was not sent out to change a tire or make any other repairs away from respondent's premises.

The foreman's testimony was somewhat corroborated by the absence in respondent's records of a purchase order from Branch which would have shown a request for the services petitioner testified that he rendered, and the absence of any invoice for such services from respondent to Branch. Although respondent is a corporation it is principally owned by Americo Lapati. The records were introduced through him and he testified that if petitioner had performed such services there would be a record of the purchase order and corresponding invoice.

On the other hand, Louis Colafrancesco, an employee of Branch, testified that he remembered seeing petitioner

changing the tires at about 1:30 on the morning of December 7, 1961. A fellow employee, Henry Viera, testified that he recalled petitioner changing a tire sometime in December but was unable to give the exact date.

The petitioner further testified that after changing the tires he returned to respondent's garage where he was assigned by the foreman to finish repairs to a truck on which the day shift had been working. Specifically he stated that this work consisted of assembling the drive shaft by first connecting the rear end or differential with one end of the drive shaft and then connecting the other end with the transmission. This required him to work while lying on his back and lifting the seventy-five-pound drive shaft by hand.

It is also his testimony that the foreman was working on a dump truck nearby and was "bleeding" the oil lines after putting in thirty quarts of oil. The "bleeding" required that the motor be running and this process took some thirty minutes, resulting in heavy fumes.

It was petitioner's recollection that he had attached one end of the drive shaft to the differential and was proceeding to attach the other to the transmission when he experienced a severe headache. Allegedly he was then seized with very sharp pains in his chest, felt very weak and called five or six times for help from the foreman, who assisted him to a truck and drove him to Roger Williams General Hospital.

The foreman, however, testified to a completely different version of the pertinent events. According to him the day shift had installed the drive shaft except for coupling up the front of it with the transmission and tightening the bolts. This he described as requiring no lifting at all. In addition to such coupling, the foreman testified, petitioner bolted the top cover of the transmission, a simple tightening process achieved with an ordinary wrench.

He also testified that the "bleeding" of the other truck took no more than three to four minutes and that petitioner did not call for help but rather walked up to him, complained that he did not feel well, and asked to be taken to the hospital.

Doctors Hayes and Sharp testified on behalf of petitioner. Each was asked an involved hypothetical question which was premised on every circumstance relating to exertion, gas fumes and adverse working conditions as related by petitioner. In response to such question both doctors gave as their opinions that petitioner's incapacity, diagnosed as a myocardial infarction, was caused or brought on by the circumstances under which petitioner testified to have been working on the morning of December 7, 1961.

Doctor Karas testifying for respondent held a more optimistic view of petitioner's condition at the time of the hearing than Doctors Hayes and Sharp, but he also conceded that based on petitioner's version relating thereto petitioner's illness was a result of such work and conditions. Thus his claim for compensation benefits was predicated on the nature and conditions of work as related by him and his witnesses.

The single commissioner found that petitioner's version was not to be believed. In his decision he reviewed the evidence before him and pointed to that portion thereof on which his finding was based. Our independent examination establishes that the evidence on which he relied was before him and that the weight given to it by him and thereafter by the full commission on appeal is not open to question by this court. *Pimental* v. *S. Rubin, Inc.*, 92 R. I. 346.

It is obvious from the foregoing, therefore, that there is no merit in petitioner's contention that the record is devoid of competent evidence on which the single commissioner could have made the finding sustained by the full commission. He points to the uncontradicted testimony of the

three doctors as conclusive evidence that the heart injury sustained by him was directly referable to and connected with the work in which he was engaged for respondent. Although the testimony of the doctors on which he relies is uncontradicted as he contends, the probative value of such evidence is predicated on his version of the labor performed for his employer. The single commissioner refused to accept petitioner's testimony and that of the Branch employees which tended to corroborate petitioner. He pointed to competent evidence on which he rejected petitioner's version and thus the factual finding becomes a question of weight.

Nor did the single commissioner, and on review the full commission, misconceive the applicable law. The petitioner argues, as we understand him, that even on the finding of the single commissioner petitioner would be entitled to prevail. In support thereof he cites numerous cases. However, they are of no assistance to him since, in the instant case, there was no evidence of a causal connection between petitioner's injury and the work which the single commissioner found as a fact.

We turn then to a consideration of the remaining issue, namely, that it was error for the full commission to deny petitioner's motion that the single commissioner disqualify himself. This contention rests on the proposition that the provisions of §28-35-28 violate article XIV of amendments to the United States constitution in that they constitute a denial of due process. The pertinent language of this provision is as follows:

> "Any member of the commission may, for cause, disqualify himself from hearing any appeal that may come before the commission. Notwithstanding the use in this section of the term 'full commission' two (2) of the members of the commission shall constitute a quorum for the exercise of any of its powers and the performance of its duties."

It is observed that this provision does not require the single commissioner who heard the petition to sit in review but rather leaves it to him to disqualify himself or not as he deems advisable. Hence we conceive the thrust of petitioner's contention to be that the statute violates due process because it does not prohibit the trial commissioner from participating in the appeal to the full commission. In support of such contention he cites *In re Murchison,* 349 U. S. 133, which arose out of a Michigan statute that authorized a single justice to act as a one-man grand jury and then sit in judgment on his own determination arising out of the grand jury proceedings which he conducted. We do not perceive that the decision in the *Murchison* case is applicable here.

It is a well-settled and long-established principle of law that a judge in an inferior tribunal may participate in review at the appellate level unless prohibited by constitution or statute. See *In re Mavroidi's Estate,* 60 N. Y. S.2d 344. No decision of the United States Supreme Court in point has been called to our attention nor has our independent research uncovered any. In *Henry* v. *Hodges,* 171 F.2d 401, 402, the United States Court of Appeals for the Second Circuit referring to *Mavroidi's Estate* said: "There is no inherent reason to deny power to a judicial officer to review his own judgments, even though they be final and decide the very merits of the cause; at common law this was permissible."

In establishing the workmen's compensation commission in this jurisdiction the legislature first provided for a mandatory review by the three commissioners and subsequently amended that requirement by providing that two commissioners would constitute a quorum, expressly authorizing the trial commissioner to disqualify himself at his discretion. It may well be that the legislature intended in this manner to provide against the failure of a quorum in the

event that either of the other two commissioners, by reason of illness or unforeseen circumstances, would be unable to serve. It did not prohibit the trial commissioner from participating in the review by the full commission, and if it had intended to do so the legislature could very readily have so provided. By contrast with the provision under consideration, the legislature has expressly prohibited a justice of this court from participating in an appellate hearing of a cause over which he presided in an inferior court. G. L. 1956, §8-3-5.

Here the legislature vested in the trial commissioner the right to make such a determination and in so doing did not violate any constitutional provision. Thus in denying the petitioner's motion, the other members of the commission did not err for the obvious reason that it was not for them to decide the question. The legislature specifically provided that determination as to the disqualification of the trial commissioner should be left to his discretion.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Haig Barsamian, Goldberg & Goldberg, Leo M. Goldberg,* for petitioner.

*Worrell and Hodge, Eldridge H. Henning, Jr.,* for respondent.