226 A.2d 410.

UNITED STATES RUBBER COMPANY *vs.* MARY B. CURIS.
MARY B. CURIS *vs.* UNITED STATES RUBBER COMPANY.

FEBRUARY 6, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. These are two appeals by an employer from decrees of the workmen's compensation commission where in one cause the employer's petition to review a preliminary agreement was denied and dismissed, and in the second the employee's petition wherein she sought to amend the preliminary agreement so as to identify her injuries more fully and also obtain the payment of certain medical expenses in excess of the statutory maximum was granted. The appeals were consolidated for a hearing before us.

The employee, a resident of Blackstone, Massachusetts, worked as a supervisor at the employer's plant in Woonsocket. On March 17, 1961, she was attending the usual supervisors' conference which was held in the plant by the employer to discuss the control and maintenance of the quality of the goods manufactured at this plant. As she sat down in a chair in the conference room, one of its legs broke and she fell to the floor striking the right side of her body. She experienced immediate pain in her back and was taken forthwith to the office of a local physician. The employee has been under medical treatment from the date of her injury until the day of the hearing before the trial

commissioner—a period of almost four years. She has been unable to work during this time.

On March 28, 1961, the parties hereto entered into a preliminary agreement for the payment of compensation benefits for the duration of her total incapacity. During the intervening years since the execution of this agreement, employee has been hospitalized on three different occasions. In January 1962 she underwent a myelogram which disclosed the presence of a possible ruptured intervertebral disc. Surgery which was performed by Dr. Julius Stoll, Jr., in May 1962 confirmed this diagnosis and resulted in the removal of portion of the disc at the fourth and fifth lumbar vertebrae. Employee's complaints of pain in her back and lower extremity persisted, however, and in June 1963 she underwent another myelogram with the results being negative. Doctor Stoll has been treating employee for the greater part of the time of her incapacity.

The employee has taken the following measures aimed at relieving the pain she experiences. At one time or another since March 17, 1961 she has engaged in certain physical exercises, undergone diathermy and ultrasonic treatments, has had her back strapped, and in recent years upon the advice of her physician she has been using a considerable amount of various types of medicines. In addition, employee has consulted with the authorities at Pratt Diagnostic Clinic in Boston where at one time a discussion was held as to the feasibility of a second operation whereby a fusion of the fractured vertebrae would be attempted.

In her appearance before the trial commissioner employee described how the pain in her back and right buttock has persisted ever since the date of her injury. This pain also radiates into her right leg. Doctor Stoll testified that he had found objective signs which verify employee's complaints.

The record discloses that employer has voluntarily paid

close to $1,600 for various medicines prescribed by Dr. Stoll for the employee. In December 1964, however, the employer notified employee that it would no longer pay for these items. The employee has since this time expended her own funds to obtain these medicines.

The employee stated that because of her pain and discomfort she can remain on her feet for only short periods of time. She told the trial commissioner that the maximum amount of time she can remain standing is two hours and at the end of this time it is necessary that she lie down and rest. The employee described how she makes her bed at home while kneeling on the floor. She attributes this unusual posture to the fact that if she bends the pain increases.

After the negative finding of the second myelogram, Dr. Stoll attributed employee's complaints to postoperative pain caused by an irritation of the nerve roots in the area of the damaged disc. Her condition, he testified, has remained essentially the same. Doctor Stoll gave an opinion based upon his objective findings that employee has pain and he was sure "she hurts." Although the physician stated that he would like to see his patient try to work, he did not know if she could work. Any job she attempted, he testified, would have to be limited as to hours and activity; that she could work no more than four hours a day with a break in between and could not engage in any activity which involves any lifting or bending; and that any position offered to her would have to be one which gave her freedom of movement so that she could get up and move any time the pain bothered her.

Although testimony was presented of three positions that might be available, there was no evidence that employee had the requisite skill and training to perform in one which was offered, and the others called for work far in excess of the limited hours set forth by her physician. Two of these positions were classified as temporary vacancies.

The employer first attacks the decision of the full commission in each of the instant causes. It points to some of the language used in each of them and concludes from its presence that the commission disregarded its duty in these premises as set forth in *Cairo* v. *Sayles Finishing Plants, Inc.*, 83 R. I. 297, 302. See also *Sorafine* v. *York Decorators Co.*, 90 R. I. 374, 378. In those two cases we delineated the rule that on an appeal from a trial commissioner's decree the full commission is obliged to weigh the evidence and decide for itself where the preponderance lies. The commission in its appellate capacity has a much broader discretion than that possessed by this court. By law we cannot weigh the evidence in these causes. On its review, however, the commission is free to make its own findings of fact and is not bound to accept any finding of the trial commissioner's decree which it believes to be against the evidence and the weight thereof.

While both decisions of the commission contain certain phrases which have been used by this court when exercising our appellate jurisdiction, it is clear, however, after a careful analysis of both decisions that notwithstanding the incautious use of certain language, the commission did in each cause make an independent appraisal of the evidence, weighed the same and decided where the fair preponderance lay.

Failing in this, employer then contends that its petition for review should have been granted because the uncontradicted evidence shows that employee was only partially incapacitated and therefore she should be directed to look for suitable work. In support of this position employer refers us to our decision in *Cranston Print Works Co.* v. *Picano*, 94 R. I. 69. We disagree that the evidence of employee's partial disability was uncontradicted or that *Picano* is applicable here.

*Picano* differs considerably from the cause before us. There the commission found on an employer's petition to

review that the employee's total incapacity had ended and that he was partially incapacitated. The employee was then directed to make a bona fide effort to find work which he was able to perform. In approving the commission's action in this regard we pointed out that the second provision of §28-33-18 allows a partially incapacitated employee under certain prescribed conditions to receive as weekly compensation the amount payable for total incapacity. These conditions are that the employee make a bona fide attempt without success to obtain suitable work and the employer has not offered the employee suitable work he is able to perform or shown that suitable work is available elsewhere. We said that in order for a partially incapacitated employee to qualify for payments of total incapacity under this particular provision, it was his duty to show that he had made a genuine effort without success to obtain suitable work.

Here, however, the employer's petition for review was denied. The petition was based upon employer's allegation that employee's incapacity had diminished. It therefore became its burden to show by the fair preponderance of the evidence the truth of its charge. While employer devotes a considerable part of its brief quoting portions of its cross-examination of Dr. Stoll, there is in the record testimony of this physician which effectively negates the employer's allegation. Doctor Stoll testified that he did not know if employee could do any work. He was of the opinion that it would be very difficult for her to be gainfully employed. These statements together with employee's graphic description of her pains provided a sufficient basis for the denial of employer's petition. Unlike *Picano,* this employee is still totally incapacitated and she is under no duty to obtain work. *Atlas Tool & Findings Co.* v. *Duffy,* 81 R. I. 61; *Imperial Knife Co* v. *Gonsalves,* 86 R. I. 68.

There is no error in the denial of employer's petition to review.

We now consider the affirmative action of the commission in granting the petition of employee whereby the preliminary agreement was amended to include in the description of employee's injuries the phrase "back injury" and employer was ordered to pay for employee's medicines which cost more than the maximum set forth in the pertinent statute.

Employer contends that the commission erred when it permitted the amendment of the preliminary agreement and that it lacked jurisdiction to order the employer to pay for medicines being used by employee and costing in excess of the statutory maximum.

The commission acted properly when it approved the employee's petition to amend the preliminary agreement. Her petition in this regard is based upon the provisions of G. L. 1956, §28-35-5, which provides that a preliminary agreement may be amended if due to a failure to correctly diagnose the injury it "fails to set out correctly all the injuries received by the injured employee or fails to set out *all parts of the body affected by such injuries * * *.*" (italics ours) In such circumstances, the commission may conform the provisions of the agreement with the correct description of the nature and location of an employee's injuries.

It is evident from the record that the preliminary agreement had been prepared by employer when it was presented to employee for her signature on March 28, 1961—just eleven days after the accident. On the day she was injured employee, besides being treated by a physician, had X rays taken of her back. It was an examination of these X rays which caused the nature and location of her injuries to be described in the preliminary agreement as "undisplaced fractures—last sacral and first coccygeal segments." During this eleven-day period the physician who had been treating employee became ill and had been admitted to the hospital —in fact, he was in the hospital at the time the preliminary agreement was executed. The employee was thereupon re-

ferred to a second physician who in turn had her consult with Dr. Stoll. Doctor Stoll first saw employee in August 1961 and it was considerably after this date that he concluded that she not only had a ruptured disc but that her nerve roots had been irritated by the presence of the ruptured disc.

This court is not prone to indulge in anatomical hair-splitting. While employer has rendered a scholarly and informative discourse as to why the irritation of employee's nerve roots should be classified as a condition and not an injury, it has no application here. It is clear that as a result of the unfortunate incident of March 17, 1961, the employee received a ruptured disc in her back and that she experiences pain as a result thereof. Based on the evidence and the provisions of §28-35-5 the action of the commission in its amending the preliminary agreement was correct.

In challenging the jurisdiction of the commission to order payment for medicines in excess of the statutory maximum employer directs our attention to certain provisions of §28-33-5, as amended, which reads in part as follows:

> "The employer shall * * * promptly provide for an injured employee such reasonable medical, surgical, dental, optical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus for such period as is necessary, in order to cure, rehabilitate or relieve the employee from the effects of his injury, provided, however, that the charges for *services* and *medicines* exclusive of hospital services shall not exceed the sum of * * *. In case the amounts stipulated by this section are not sufficient to cover necessary specialized or prolonged *services*, the workmen's compensation commission may order payment of additional charges after hearing upon petition, and its decision shall be final." (italics ours)

In support of its position employer points out that the first portion of this section provides that the charges for *services* and *medicines* exclusive of hospital services shall not exceed a certain amount while a latter portion of this

same section provides that if the amounts stipulated by this section are insufficient to cover necessary specialized or prolonged *services*, the commission may after a hearing order the payment of additional charges. Employer contends the absence of the term "medicines" in the latter portion prohibits the assessing against an employer the cost of additional medicines beyond the amount set forth in the earlier portion of this section. Medicine, it claims, is not included within the term "services" as it is set forth in the latter portion of this section. We disagree.

The purpose of §28-33-5 is to afford to an injured employee a vehicle whereby he can be assured of all medical services and treatment necessary for any program which may be prescribed for his cure, rehabilitation or relief. This section is broader and more encompassing than employer contends and is in our judgment sufficiently comprehensive in its scope so as to provide the employee not only with the services of his physician but also the medicines required for his care during any lengthy period of disability.

The evidence presented at the hearing before the trial commissioner shows that these medicines for which payment is sought were prescribed by Dr. Stoll and were necessary for the employee to obtain relief from the pain she has experienced during the almost four years she has been under his care. It is our opinion that these medicines qualify in every way for payment under the workmen's compensation act.

In each case the employer's appeal is denied and dismissed, the decree appealed from is affirmed, and each case is remanded to the workmen's compensation commission for further proceedings.

*Carroll, Kelly & Murphy, Ambrose W. Carroll,* for appellant.

*Higgins & Slattery, William C. Dorgan,* for appellee.