Virginia A. ROCHA

v.

STATE of Rhode Island.

No. 95–165–M.P.

Supreme Court of Rhode Island.

Jan. 12, 1998.

Gary J. Levine, Providence, for Plaintiff.

Rita Pietrina Sciacca, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case is before us on the petition of the State of Rhode Island for certiorari. The state seeks review of a final decree of the Workers' Compensation Court Appellate Division (Appellate Division) reversing the trial judge's decision denying compensation benefits to Virginia A. Rocha (Rocha). The case was argued originally before four members of the court on January 23, 1997. The court was evenly divided in the case; thus the petition for certiorari was denied and the decision of the Appellate Division was affirmed. *Rocha v. State,* 689 A.2d 1059 (R.I. 1997). Thereafter, we granted the state's motion for reargument. For the reasons set forth below, we deny the petition for certiorari and affirm the decision of the Appellate Division. The relevant facts of the case are as follows.

Rocha had worked as a stenographer in the Family Court and the Workers' Compensation Court for over twenty-five years. In June of 1987 she began receiving workers' compensation benefits because of a work-related injury she sustained, bilateral ulnar nerve neurotherapy, that eventually required corrective surgery. Against her doctor's recommendation and despite concerns about her ability to perform her job-related duties, Rocha returned to work on May 8, 1989. Soon thereafter, however, she began experiencing increasing physical discomfort, and her condition eventually deteriorated to a point where she could no longer tolerate the pain. As a result Rocha stopped working on June 22, 1989, and began discharging her accumulated sick time and vacation days. Rocha stated that she did not apply immediately for reinstatement of workers' compensation benefits because she felt that if she rested, she might be able to resume work. She soon realized, however, that she could no longer perform her court reporting duties because of the condition of her hands, and at this point decided to retire. In a July 7, 1989 letter to her employer, Rocha announced her intention to retire, effective July 28, 1989. Rocha did not include the reason for her decision in the letter but did discuss it with her supervisor, who had previously been

made aware of the injury and resulting physical condition. After all her sick and vacation days had been discharged, Rocha retired on regular service retirement.

Thereafter, Rocha filed a claim for workers' compensation benefits and alleged a return of incapacity. A preliminary hearing on the matter was conducted on December 7, 1989, at the Department of Workers' Compensation. At its conclusion the hearing officer granted benefits for total incapacity from July 29, 1989, and continuing. The state appealed this decision, and a trial was held before a single judge of the Workers' Compensation Court.

During the course of the trial the judge expressed concern that Rocha had opted for regular service retirement rather than disability retirement and directed the parties to have someone from the retirement board testify. Accordingly the state presented James M. Rieley, an official of the state retirement system, who discussed the various retirement plans available to state employees: regular-service retirement, which requires the applicant to have accumulated a specific number of years of service credit; ordinary-disability retirement, which requires the applicant to be unable to work as a result of something other than a job-related injury; and accidental-disability retirement, which applies in instances in which the employee is injured on the job. Rieley testified that Rocha would have been eligible for either regular-service retirement or accidental-disability retirement and further indicated that her options were not contingent on whether she had resumed working after her initial two-year absence. Rieley further testified that in instances wherein accidental-disability retirement is elected, the retirement system is allowed to offset any moneys received by the beneficiary from workers' compensation benefits whereas regular-service employment has no such subrogation rights. Rieley stated that Rocha had a legal right to choose either form of retirement compensation and that it was "[d]efinitely" within the scope of the retirement laws for her to opt for the more lucrative package.

The medical evidence at trial consisted of the deposition testimony of Rocha's physi-

cian, Leonard Hubbard, M.D. (Dr. Hubbard), and the report of Howard S. Sturim, M.D. (Dr. Sturim), the physician who examined Rocha on behalf of the state. Doctor Hubbard testified that he had been treating Rocha since May 20, 1987, and was doubtful about her ability to return to work. Doctor Hubbard further stated that after she resumed her stenographic duties, Rocha's condition worsened, and that the increase in symptoms was causally related to the 1987 injury. Doctor Sturim concluded that Rocha was unable to function physically or emotionally and therefore unable to return to gainful employment.

Nevertheless, the trial justice denied Rocha's claim for benefits, finding that she left work for monetary gain and not as a result of injury. The trial justice stated that he found "a problem in the credibility of this employee who took the regular pension as opposed to the disability pension. Notwithstanding the fact that [disability pension was] available to her, it is inconsistent for one to do what she did. The only obvious reason to me is if * * * she took the regular pension she would be able to receive the pension plus workers' compensation benefits at the same time." The trial judge ultimately denied and dismissed Rocha's petition and entered a decree finding Rocha had failed to prove by a fair preponderance of the evidence that her incapacity for work had increased or returned by reason of the effects of her original injury.

Rocha appealed the decision, and the matter came before the Appellate Division for a de novo review of the case. The Appellate Division reversed the trial judge's decision, finding that he had erroneously based his determination of Rocha's credibility on irrelevant factors, specifically that Rocha had opted for regular-service retirement rather than disability retirement. The Appellate Division stated that the medical evidence supporting Rocha's claim was uncontroverted and proved that Rocha had in fact suffered a recurrence of a work-related injury. The court concluded that Rocha's choice of retirement plans had no legal effect on her proof of recurrence and ordered the state to pay Rocha partial-incapacity benefits. The state filed a petition for writ of certiorari with this

court. We issued the writ and now affirm the decree of the Appellate Division.

On review the state argues that the Appellate Division erred in overturning the credibility determination of the trial judge since the timing of Rocha's retirement is relevant to the question of whether she left work because of an injury or because of the benefits of an early-retirement system. Conversely Rocha maintains that her lawful choice of the regular-retirement option constitutes an irrelevant basis upon which to deny her claim for workers' compensation benefits and that the uncontroverted medical testimony supports the Appellate Division's finding of incapacity.

■■■ In reviewing a decree of the trial judge, the Appellate Division conducts a de novo review of the case, examining evidence, drawing its own conclusions, making its own findings of fact, and ultimately deciding whether the evidence supports the lower court's ruling. *See Davol, Inc. v. Aguiar,* 463 A.2d 170, 173 (R.I.1983). When reviewing findings based upon a credibility determination, however, the Appellate Division must first find that the trial justice was clearly wrong or overlooked or misconceived material evidence in arriving at the determination of credibility. *See American Hoechst Corp. v. Carr,* 621 A.2d 710, 712 (R.I.1993); *Davol,* 463 A.2d at 174. If the Appellate Division finds such error, the findings of the trial judge that are based upon erroneous credibility determinations may be overturned. *Id.* This court will not disturb the findings of the Appellate Division so long as legally competent evidence exists in the record that supports the findings. *See Salgueiro v. Stop & Shop, Inc.,* 551 A.2d 1388, 1390 (R.I.1989); *Hicks v. Vennerbeck & Clase Co.,* 525 A.2d 37, 41 (R.I.1987). In cases in which the Appellate Division has overturned the credibility findings of the trial judge, this court will also determine whether the Appellate Division applied the appropriate standard of review. *Id.*

After a careful review of the record, we are of the opinion that the Appellate Division employed the correct standard of review and properly relied on *Villa v. Eastern Wire Products Co.,* 554 A.2d 644 (R.I.1989), in concluding that the trial judge's credibility determination constituted a clear error of law. In *Villa* the employee filed a claim for workers' compensation benefits after injuring his hand while at work. At his hearing before the Workers' Compensation Commission, uncontradicted medical evidence was introduced regarding the employee's injury as was evidence that the employee had previously entered the country illegally and relied on fake Social Security numbers to conceal this fact. The trial commissioner denied the employee's petition for benefits, finding that the employee's illegal activities tainted his credibility and that as such he failed to present sufficient evidence to prove a work-related injury.

On review this court reversed and held that "[the trial commissioner's] obvious disapproval of employee's method of entry into this country cannot form the basis for a denial of compensation benefits." *Villa,* 554 A.2d at 646. The *Villa* court further stated that it was "readily apparent that the credibility of [the] employee was not a significant factor in determining whether he had suffered an injury arising out of and in the course of his employment. This element of the case was established by uncontradicted and overwhelming evidence from witnesses other than employee." *Id.*

"In the case at bar employee's credibility was scarcely an issue. The nature of the injury, the cause of the injury, and the result of the injury were established beyond any reasonable doubt by witnesses other than employee himself. * * * The undisputed medical evidence presented before the trial commissioner was not dependent upon the credibility of employee. His course of treatment and medical history were corroborated by unimpeachable testimony apart from that of employee. To ignore this uncontradicted evidence on the ground that at some prior point in employee's life he had entered this country illegally constitutes not a credibility determination but a manifest error of law." *Id.* at 647.

■■■ Similarly, the "obvious disapproval" of the trial judge in this case regarding Rocha's choice of retirement benefits cannot

form the basis for the denial of compensation benefits. Rocha's election of two legal options available to her has absolutely no bearing on credibility, and such a decision constitutes a manifest error of law. Furthermore Rocha's credibility was not a significant factor in determining whether she had suffered a compensable injury. The sole issue before the court was whether Rocha experienced a return of her incapacity. To that end Rocha presented the uncontroverted testimony of her physician, Dr. Hubbard, who testified that he had advised Rocha against returning to work because of its repetitive activity and the post-surgery discomfort she continued to experience. Doctor Hubbard stated that after Rocha resumed her stenographic duties, her pain increased, and this deterioration was causally related to the compensable injury she sustained in May 1987. Moreover, Dr. Sturim, who examined Rocha on behalf of the state, reported that Rocha was physically and emotionally unable to continue doing her regular work. Accordingly we conclude that the trial judge was clearly wrong in arriving at the determination of credibility and that it was thus appropriate for the Appellate Division to review. Furthermore, we hold that the legally competent medical evidence contained in the record supports the finding that Rocha sustained a recurrence of her prior injury such that the award of partial-incapacity compensation benefits was proper.

For the reasons set forth, we deny the petition for certiorari and quash the writ heretofore issued. The decree of the Appellate Division is affirmed, and the case may be remanded to the Workers' Compensation Court.